CHARLES R. JONES, Judge.
|, This matter is before the Court pursuant to an order of remand by the Supreme Court dated November 5, 2010. The order directs this Court to reconsider the merits of these[1] writ applications in view of the district court’s May 26, 2010 order granting approval of a settlement class. After a review of the issues herein, we reverse and remand with instructions.
The facts underlying this matter are discussed at length in appeal No. 2008-CA-1486.[2] The scope of our review in the appeal concerned the judgment of the district court denying class certification in this toxic tort case. The denial of class certification by the district court was based on the recommendations made by the Special Master, who was appointed by the district court. Ultimately, this Court affirmed the judgment of the district court denying class certification on January 28, 2010.
|2On February 19, 2010, an emergency writ application, No. 2010-C-0250, also entitled Leo Pollard, et al v. Alpha Technical, et al., was filed by the Earl Adams, et al., plaintiffs (the Adams plaintiffs) in reference to the same toxic tort litigation. The Adams plaintiffs alleged therein that the district court, on January 11, 2010, rendered judgment granting the motion for Preliminary Approval of Class Settlement urged by the Plaintiffs’ Management Committee (the respondents) which purported to include certain litigants. Particularly, in the writ application, we were presented with a disputed preliminary class settlement, but there was no “class,” as determined by the district court and affirmed by this Court on appeal. However, as reflected in the January 11, 2010 ex parte order attached to the writ application, the district court had in fact approved a class settlement that had been requested by the Plaintiffs’ Management Committee. We also noted that while the district court purportedly approved the motion for Preliminary Approval of Class Settlement on January 11, 2010, the district court had been clearly divested of jurisdiction. In our disposition, this Court: (1) granted a stay of proceedings related to the rendering of judgment granting the motion for Preliminary Approval of Class Settlement pending the finality of the appeal, and (2) vacated the district court’s rulings on the motion for new trial and remanded the matter for the district court’s reconsideration.
Subsequently, in the instant consolidated writ applications, 2010-C-0788, and 2010-C-0805, the Adams plaintiffs (and the Mitchell plaintiffs, respectively) alleged that while the motion for new trial was before the district court for reconsideration, counsel for the Plaintiffs’ Management Committee re-urged the identical motion for Preliminary Approval of Class Settlement and, that same was |sonce again approved by the district court via written *75 judgment and reasons dated May 26, 2010, followed by the detailed order dated May 28, 2010.
In its May 26, 2010, judgment and written reasons, the district court wrote in pertinent part:

JUDGMENT AND REASONS FOR JUDGMENT

This matter came for hearing on May 26, 2010 on the Motion for New Trial filed on behalf of Defendant Intracoastal Tubular Service, on Motion for New Trial with Motion to Set Aside, Vacate and Annul Preliminary Order filed on behalf of Earl Adams, et al. Plaintiffs, and on Motion to Set Aside Judgment and for New Trial filed on behalf of Pamela Mitchell, Melvin Lewis, Rose Benjamin, Rev. Johnny McKinnis, Rev. Calton Lewis and Rev. Jerry Davis, Sr. Additionally, the Court heard argument on the Plaintiff Management Committee and Settling Defendants Joint Motion to Re-Urge Joint Motion for Preliminary Approval of Settlement and Certification of Settlement Class and to Amend January 11, 2010 Order to Re-Set Deadlines, Objections to Preliminary Approval of the Settlement and Certification of the Settlement, and Supplemental Objections to Motion to Re-Urge Preliminary Approval of Settlement Class and to Amend Deadlines for Opting Out.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
The Court after considering the law, evidence and argument of counsel, renders judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Intracostal Tubular Service’s Motion for New Trial is DENIED.
IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs Pamela Mitchell, Melvin Lewis, Rose Benjamin, Rev. Johnny McKinnis, Rev. Calton Lewis, and Rev. Jerry Davis, Sr.’s Motion For New Trial is DENIED.
IT IS ORDERED, ADJUDGED AND DECREED that Earl Adams, et al. Plaintiffs’ Motion for New Trial with Motion to Set Aside, Vacate and Annul Preliminary Order on the Grounds of ill Practice, Denial of Due Process and Fraud Upon the Court is DENIED.
|JT IS ORDERED, ADJUDGED AND DECREED that Earl Adams, et al Plaintiffs’ Objections to Preliminary Approval of Settlement and Certification of Settlement Class are DENIED.
IT IS ORDERED, ADJUDGED AND DECREED that Earl Adams, et al Plaintiffs’ Supplemental Objections to the Motion To Re-Urge Preliminary Approval of the Settlement Class and to Amend Deadlines for Opting out is DENIED.
IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff Management Committee and Settling Defendants’ Joint Motion to Re-Urge Joint Motion for Preliminary Approval of Settlement and Certification of Settlement Class and to Amend January 11, 2010 Order to Re-Set Deadlines is GRANTED.
The two-step approach for approval of a settlement class is laid out in Gates v. Rohm & Haus [Haas] Co., 248 F.R.D. 434, 438-489 (E.D.Pa.2008), Armstrong v. B.Q. [Board] of School Dirs., 616 F.2d 305, 314 (7 Cir.1980), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7 Cir.1998); In re Mid-Atlantic Toyota Antitrust Litig., 564 F.Supp. 1379, 1384 (D.Md.1983); Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc., 855 F.Supp. 825, 827 (E.D.N.C.1994). First, the Court issues a preliminary approval of the settlement, where the court reviews the proposed settlement *76 for obvious deficiencies, schedules a fairness hearing, and provides the class with notice of the proposed settlement and hearing. Second, the court considers the final approval of the proposed settlement at a formal fairness hearing during which arguments and evidence are presented in support of and in opposition to the proposed settlement.
On a motion for preliminary approval the Court need only ascertain whether there is “probable cause” to notify the class members of the proposed settlement and to proceed with a fairness hearing. Mid-Atlantic Toyota, 564 F.Supp. at 1384. When making the preliminary determination of fairness of the settlement, the standard is not whether the settlement was the best of all possible deals, but rather, “whether it is fair, adequate, and free from collusion.” Hunlon [Hanlon] v. Chrysler Corp., 150 F.3d 1011, 1027 (9 Cir.1988) [(9 Cir.1998) ]. When a proposed settlement appears to fall within the range of possible approval, it is appropriate to issue preliminary approval | ¿and direct notice to members of the settlement class. Horton, 855 F.Supp. [825] at 827. Thus, for these reasons the Court preliminarily approves the proposed settlement class.
Additionally, Movers requested a new trial on the basis that they had not received notice and were not given a meaningful opportunity to be heard. Under La. C.C.P. Art. 594(B), a formal hearing is not required until after preliminary approval and notice of the compromise has been provided to the class. Further, Rule 9.8(c)(2) of the Rules for Louisiana District Courts exempts parties from filing contradictory motions in instances where all affected parties have been joined in the filing of the motion. Here, the settling parties were the only parties in this case affected by the joint motion for preliminary approval of the settlement. The Defendant objectors were not “affected” parties and the objecting Plaintiffs were not parties at all. Thus, the settling parties were neither required to obtain their consent to the joint motion nor to set the joint motion for contradictory hearing. Nonetheless, the Court set this matter for hearing on May 26, 2010, and all objections to the preliminary approval of the settlement class have been heard. Thus, for these reasons the Court finds that notice to the objectors was sufficient and the requirements for preliminary approval of the settlement class were fully satisfied.
New Orleans, Louisiana, May 26, 2010. [Emphasis in original]
In its Order Preliminarily Approving Class Action Settlement and Certifying Class Action For Settlement Purposes, dated May 28, 2010, the district court specified:
1. Settlement Class: The Court has considered the submissions of the Settling Parties with regard to class certification for settlement purposes only and has analyzed the proposed Settlement Class pursuant to Articles 591(A), (B)(1)(b), (B)(3), and (B)(4) of the Louisiana Code of Civil Procedure. The Court finds that all elements necessary for certification of the proposed Settlement Class under Articles 591(A), (B)(1)(b), (B)(3) and (B)(4) have been satisfied.... [Emphasis added]
| fiThe district further indicated that the requirements of numerosity, commonality, typicality, adequate representation, class definition, and predominance were met by the settling parties, and the district court went on to certify the following class of plaintiffs as a settlement class:
*77 ... all persons or entities who or which owned real property and/or lived and/or operated a place(s) of business and/or regularly worked, attended school, and/or attended church from 1946 to June BO, 2008 within the geographic boundaries of the properties in and between the point beginning at the intersection of 8th and Manhattan Boulevard, then running south along the west side of Manhattan Boulevard to Lapalco Boulevard, then running west along the north side of Lapalco Boulevard to the 1st Avenue Canal, then running north to Patriot Street, then running west to MacArthur Avenue, then running north along the east side of MacArthur Avenue to 7th Street, and then running east to 8th Street to the point of beginning in Harvey, Louisiana, Parish of Jefferson, and who or which claim to have sustained damages as a result of the release or dispersion of toxic and/or hazardous substances, including lead, TERM, NORM, radioactive substances and/or materials, and/or associated dust generated, stored or released as a result of oil field pipe cleaning operations conducted on the Property [as defined in the PSA] ... by or on behalf of one or more of the Settling Defendants and/or Released Parties [as defined in the Settling Parties’ Preliminary Settlement Agreement].
Lastly, the district court further defined the geographic boundary as:
... beginning at the intersection of Peters Road and Breaux Avenue, thence Northerly along Peters Road to the northern boundary of Square J Lot 11, thence Easterly along the Northern boundary of Lot 11 of Square J to the western boundary of Square I, thence Northerly along the western boundary of Square I to the northern boundary of Square I Lot 35 of the Rathborne Subdivision, thence Easterly along the northern boundary of Square I Lot 35 of the Rathborne Subdivision to Grefer Avenue, thence Southerly along Grefer Avenue to 16th Street, thence Easterly along 16th Street to the eastern boundary of the property owned now or formerly by the Grefers, thence Southerly along the Eastern boundary of the Gre-fer Property to Breaux Avenue, 17thence Westerly along Breaux Avenue to the point of beginning in Harvey, Louisiana.
After reviewing the writ application, this Court, on June 15, 2010, issued a disposition finding that the district court’s reliance on the case law therein was clearly in error because there had not been a class certified. We reiterated that the district court had refused to certify a class, and that the respondents herein had sought relief of the district court’s failure to certify a class in appeal No. 2008-CA1486. We saw nothing in the previously filed appeal or the emergency writ applications either certifying or defining a class. We further noted that proeedurally, the district court could not establish a new methodology for approving a class settlement without first granting a new trial and then certifying a class.
Nevertheless, the Adams plaintiffs sought writs of certiorari from the Supreme Court, and after its review, the Supreme Court remanded the matter to this Court on November 5, 2010. In its per curiam, the Supreme Court wrote:
[w]e find no indication that the court of appeal considered the district court’s subsequent May 28, 2010, “Order Preliminarily Approving Class Action Settlement and Certifying Class Action for Settlement Purposes,” although relators represent that a copy of the May 28, 2010 order was submitted to the court of appeal. Because the district court’s May 28, 2010 order provides detailed *78 factual findings regarding the certification of a settlement class for purposes of La.Code Civ. Proc. art. 591(B), we find that the court of appeal should have considered this order before it vacated the district court’s order granting preliminary approval to the settlement and certifying a class settlement.
On November 15, 2010, Mr. Geroge F. Riess filed a Motion to Withdraw Emergency Writ Application to the Fourth Circuit Court of Appeal, Filed June 4, 2010. (No. 2010-C-805), which this Court granted.
^Subsequently, on December 2, 2010, this Court issued an order scheduling briefing deadlines and directed the district court to provide a per curiam. In its per curiam, dated December 6, 2010, the district court wrote in pertinent part:
Pursuant to the Fourth Circuit Court of Appeals’ order issued on December 2, 2010, the District Court reissues its reasons for judgment as it’s per curium as per the order of the Fourth Circuit Court of Appeals.
The two-step approach for approval of a settlement class is laid out in Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438-439 (E.D.Pa.2008); Armstrong v. B. Of School Dirs., 616 F.2d 305, 314 (7 Cir.1980), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7th Cir.1998); In re Mid-Atlantic Toyota Antitrust Litig., 564 F.Supp. 1379, 1384 (D.Md.1983); Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc., 855 F.Supp. 825, 827 (E.D.N.C.1994).
First, the Court issues a preliminary approval of the settlement, where the court reviews the proposed settlement for obvious deficiencies, schedules a fairness hearing, and provides the class with notice of the proposed settlement and hearing. Second, the court considers the final approval of the proposed settlement at a formal fairness hearing during which arguments and evidence are presented in support of and in opposition to the proposed settlement.
On a motion for preliminary approval the Court need only ascertain whether there is “probable cause” to notify the class members of the proposed settlement and to proceed with a fairness hearing. Mid-Atlantic Toyota, 564 F.Supp. at 1384. When making the preliminary determination of fairness of the settlement, the standard is not whether the settlement was the best of all possible deals, but rather, “whether it is fair, adequate, and free from collusion.” Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (96 Cir.1988) [ (9 Cir.1998) ]. When a proposed settlement appears to fall within the range of possible approval, it is appropriate to issue preliminary approval and direct notice to members of the settlement class. Horton, 855 F.Supp. [825] at 827. Thus, for these |9reasons the Court preliminarily approves the proposed settlement class.
Additionally, Movers requested a new trial on the basis that they had not received notice and were not given a meaningful opportunity to be heard. Under La. C.C.P. Art. 594(B), a formal hearing is not required until after preliminary approval and notice of the compromise has been provided to the class. Further, Rule 9.8(c)(2) of the Rules for Louisiana District Courts exempts parties from filing contradictory motions in instances where all affected parties have been joined in the filing of the motion. Here, the settling parties were the only parties in this case affected by the joint motion for preliminary approval of the *79 settlement. The Defendant objectors were not “affected” parties and the objecting Plaintiffs were not parties at all. Thus, the settling parties were neither required to obtain their consent to the joint motion nor to set the joint motion for contradictory hearing. Nonetheless, the Court set this matter for hearing on May 26, 2010, and all objections to the preliminary approval of the settlement class have been heard. Thus, for these reasons the Court finds that notice to the objectors was sufficient and the requirements for preliminary approval of the settlement class were fully satisfied. [Emphasis in original]
In the remanded consolidated writ applications, 2010-C-0788, and 2010-C-0805, the Adams plaintiffs once again argue that while the motion for new trial was before the district court for reconsideration, the Plaintiffs’ Management Committee[3] re-urged the identical Motion for Preliminary Approval of Class Settlement and, that same was once again approved by the district court via written judgment dated May 26, 2010, followed by a detailed order dated May 28, 2010. The Adams plaintiffs also raised the following assignments of error:
|io(l) The district court abused its discretion in recommending “Zero Recovery” for plaintiffs listed in Section 1 of the Notice Plan;
(2) The district court abused its discretion by “ignoring” Orill [Orrill] v. AIG, Inc., 2009-0888 (La.App. 4 Cir. 4/21/10), 38 So.3d 457; and,
(3) The district court erred in failing to notice a “Lack of Candor to the Tribunal” by the settling defendants in the proposed Notice Plan.

DISCUSSION

This Court has held that “the trial court can alter, amend or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action at any time prior to a trial on the merits.” Marshall ex rel. minor children v. Air Liquide-Big Three, Inc., 2008-0668 p. 13 (La.App. 4 Cir. 12/17/08), 2 So.3d 541, 550, writ denied sub nom., 2009-0105 (La.3/13/09), 5 So.3d 125, La.Code Civ. Proc. art. 592 A(3)(c); also see Scott v. American Tobacco Co., 98-0452 (La.App. 4 Cir. 11/4/98), 725 So.2d 10. Furthermore,
“[flour fundamentals guide our review of class certification cases[:] (1) the standard of our review is abuse of discretion; (2) we are to be guided by the state and federal jurisprudence interpreting Federal Rule 23 and our own law; (3) for purposes of certification, a court is not permitted to review the claims in a case on their substantive merits; and (4) the burden is on the plaintiffs to establish that the statutory criteria for a class certification are met.” Duhe v. Texaco, 08-665 [08-655], p. 3 (La.App. 3d Cir. 12/10/08), 998 So.2d 1220, 1222-23, citing Duhe v. Texaco, 779 So.2d 1070 [ (La.App. 3 Cir.2001) ].
Thus, “[a] trial court has broad discretion in deciding whether to certify a class; it also has the same discretion to amend or reverse its decision at any time.” Mathews v. Hixson Brothers, Inc., 03-1065, p. 4 (La.App. 3rd Cir. 2/4/04), 865 So.2d 1024, 1028, writ denied, 04-0554 (La.4/30/04), 872 So.2d 491. Furthermore, |!/‘Louisiana’s class action statute is large *80 ly derived from Federal Rule of Civil Procedure 23. Therefore, reference to cases that interpret the federal class action statute is appropriate where there is a lack of Louisiana jurisprudence on a particular issue. See, Williams v. State, 350 So.2d 131, 133 (La.1977) (stating Louisiana class action statute was adapted largely from Federal Rule of Civil Procedure 23).” Banks v. New York Life Ins. Co., 98-0551 pp. 6-7 (La.12/7/98), 722 So.2d 990, 994 on reh’g, 98-0551 (La.7/2/99), 737 So.2d 1275.
Preliminary Concerns
In Ford v. Murphy Oil U.S.A., Inc., 96-2913, pp. 4-5 (La.9/9/97), 703 So.2d 542, 544-45 on reh’g in part sub nom, 96-2913 (La.10/10/97), 710 So.2d 235, the Supreme Court discussed the history of class actions as follows:
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. See Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.01, p. 1-2, 1-3 (3d ed.1992). The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are “similarly situated,” provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
The class action originated in eighteenth century English equity courts, as an exception to the rule that joinder of all interested parties was necessary to obtain complete justice. In the United States, the class action procedure was available only in equity until 1938 when the Federal Rules of Civil Procedure were enacted. Original Rule 23 recognized the “true” class action, which concluded the rights of all class members, whether named in the suit or not; the “hybrid” class action, in which class members made separate claims against a | ^common fund or property; and the “spurious” class action, in which the members of the class made separate claims involving common questions of law or fact. The “true” class action was described by original Rule 23(a) as an action in which “the right to enforcement for ... the class was ... joint, or common, or secondary in the sense that the owner of primary right refuses to enforce it and class member thus becomes entitled to enforce it.” As opposed to judgments in “true” class actions, judgments in “spurious” and “hybrid” class actions did not determine the rights of absent class members.
In 1961, Louisiana enacted Articles 591-597 of the Code of Civil Procedure, modeled after original Federal Rule 23. However, the redactors of the Code of Civil Procedure rejected the hybrid and spurious class action models, authorizing only “true” class actions. La. C.C.P. art. 591, Comment (c). In 1966, Federal Rule 23 was amended, eliminating the three categories of class actions. Accordingly, the statutes governing class actions in Louisiana originated from the federal class action statute as it existed between 1938 and 1966, before the explosion of “mass tort” class actions, and with the express legislative intent to recognize only “true” class actions under the original federal rule because of the availability of Louisiana’s liberal joinder and intervention rules.
*81 Because a “mass tort” class action would typically fall under the definition of a “spurious” class action, now superseded by Rule 28(b)(3), see Amchern Products, Inc. v. Windsor, 521 U.S. 591, [613-15], 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), it is problematic to apply Articles 591-597 in mass tort cases.
The Supreme Court has also held that:
La.Code Civ. P. arts. 591-597 were modeled after Federal Rule 23 as originally enacted. After amendment of Rule 23 in 1966, our courts have used the factors set forth in Rule 23(b) as guidelines to determine whether to allow a class action. Stevens [v. Board of Trustees of Police Pension Fund of City of Shreveport], 309 So.2d [144] at 150-151 [ (La.1975) ]. Recently in Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97); 703 So.2d 542, this court directed Louisiana courts to be guided by the standards for class certification set forth in Rule 23(b). Rule 23(b)(3) provides that the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a | i3class action is superior to other available methods for the fair and efficient adjudication of the controversy. To determine whether common issues predominate, a crucial question is whether the case would be manageable as a class action. The trial judge is given wide discretion in determining whether to allow class actions using the factors listed in Rule 23(b) and the “fairness” factors enunciated in Stevens. See Ford, 703 So.2d at 547-548.
Banks v. New York Life Ins. Co., 98-0551, pp. 7-8 (La.7/2/99), 737 So.2d 1275, 1280.
Considering that the Louisiana statutes closely mirror Federal Rule of Civil Procedure 23, a close examination of the respective Rule and Articles is warranted. In particular, Federal Rule of Civil Procedure (F.R.C.P.) Rule 23 provides:
(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
(1) prosecuting separate actions by or against individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
114(3) the court finds that the questions of law or fact common to class members predominate over any questions affect *82 ing only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members’ interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.
(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.
(1) Certification Order.
(A) Time to Issue. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.
(B) Defining the Class; Appointing Class Counsel. An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).
(C) Altering or Amending the Order. An order that grants or denies class certification may be altered or amended before final judgment.
(2) Notice.
(A) For (b)(1) or (b)(2) Classes. For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.
(B) For (b)(3) Classes. For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
(i) the nature of the action;
(ii) the definition of the class certified;
| Tfi(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).
(3)Judgment. Whether or not favorable to the class, the judgment in a class action must:
(A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and
(B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members. [Emphasis supplied]
(d) Conducting the Action.
(1) In General. In conducting an action under this rule, the court may issue'orders that:
(A) determine the course of proceedings or prescribe measures to prevent undue repetition or compli *83 cation in presenting evidence or argument;
(B) require — to protect class members and fairly conduct the action— giving appropriate notice to some or all class members of:
(i) any step in the action;
(ii) the proposed extent of the judgment; or
(iii) the members’ opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
(C) impose conditions on the representative parties or on intervenors;
(D). require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
(E) deal with similar procedural matters.
(2)Combining and Amending Orders. An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.
(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court’s approval. The | ^following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court’s approval.
In Louisiana, the procedure for class actions is found in La.Code Civ. P. art. 591, et seq.[4] and provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that join-der of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interest of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusive *84 ness of any judgment that may be rendered in the case.[5]
|17B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dis-positive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or....
The Civil Law Treatise notes that under La. C.C.P. art. 591, if all of the basic requirements are met, then four types of class action are potentially available, each with separate additional requirements. The 591 B(l) action is a class action where the prosecution of separate actions by or against members of the class would create a risk of “inconsistent or varying adjudiea-tions ... which would establish incompatible standards of conduct for the party opposing the class,” or a risk of judgments which would dispose of or substantially impair the rights of other members of the class who are not parties to the adjudication. The 591B(2) action is one in which injunctive or declaratory relief would be appropriate to the class as a | lswhole because of the conduct of the party opposing the class. These two are the traditional “non-opt out classes,” and are the least common.[6] (footnotes omitted.)
La. C.C.P. art. 591(B)(3) provides:
(3)The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
*85 (e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or ...
Regarding this aforementioned paragraph, The Civil Law Treatise provides: The 591B(3) class action may be maintained if the questions of law or fact common to the class “predominate over any questions affecting only individual members,” and the class action “is superior to other available methods for the fair and efficient adjudication of the controversy.” The matters pertinent to findings of “pre-domination” and “superiority” include:
1. the interest of class members in individually controlling the prosecution or defense of separate actions; 1192. the extent and nature of litigation already commenced by or against class members;
3. the desirability of concentrating the litigation in the particular forum;
4. the difficulties likely to be encountered in the management of the class action;
5. the practical ability of individual class members to pursue their claims without class certification; and
6. the “extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.” [7]
Finally, La. C.C.P. art. 591(B)(4) provides “(4) [t]he parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.”[8] The Civil Law Treatise Provides that “[t]he 591 B(4) provides for a “settlement class action,” which permits a district court to certify a 591 B(3) class action for settlement purposes even though the specific requirements for the maintenance of that type of class action are otherwise not met.” In addition, the Treatise indicates that “[t]he 591 B(l) and (2) class actions apparently bind all members of the class. The 591 B(3) class action will bind members of the class who receive notice and do not “opt out.” The 1997 legislation does not provide for the binding effect of a 591 B(4) settlement class action.”
As mentioned above, the Civil Law Treatise § 4:12 identifies a “third type of class action ... which has prompted the greatest use of the [class action] device. IsnThis type originally was the ‘spurious’ or F.R.C.P. Rule 23(b)(3) class action, which was not included in the original Louisiana Code, but was subsequently crafted by Louisiana courts. The 591B(3) action added to the Code in 1997 is a ‘spurious-type’ class action, with some additional limitations upon its use.”
*86 Based on this review of the federal rule and the state statutes, it follows that under Louisiana law, satisfaction of all elements of La. C.C.P. art. 591(A) is a prerequisite for an action to be maintained as a settlement class under La. C.C.P. art. 591(B)(4), even though the requirements of La. C.C.P. art. 591(B)(3) need not be met.
In their first assignment of error, the Adams plaintiffs argue that the district court abused its discretion in recommending “Zero Recover/’ for plaintiffs listed in Section 1 of the Notice Plan. The Adams plaintiffs argue that they sought review of the Notice Plan for the “obviously defi-cien[cy]” on its face, and for the plan “substituting collusively inadequate representation” [9] to replace counsel for the Adams plaintiffs.
In Davis v. Am. Home Products Corp., 2002-0942, pp. 5-6 (La.App. 4 Cir. 3/26/08), 844 So.2d 242, 249 writ denied, 2003-1180 (La.6/27/03), 847 So.2d 1279, this Court wrote:
The purpose and intent of a class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all other others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise their option of exclusion. Doerr v. Mobil Oil Corp., 2001-0775, p. 4 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, 1141, writ denied, 2002-0920 (La.5/31/02), 817 So.2d 105, and writ denied, 2002-0938 (La.5/31/02), 817 So.2d 106.
121Louisiana trial courts are afforded broad discretion in determining the class certification issues, and have wide latitude in considerations involving policy matters, and those requiring a preliminary analysis of the facts. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1 Cir.1989), writ denied 559 So.2d 121 (La.1990).
Furthermore, in Guillory v. Union Pac. R. Co., 2004-1545 p. 4 (La.App. 3 Cir. 11/2/05), 915 So.2d 1034, 1036 writ denied, 2005-2430 (La.3/24/06), 925 So.2d 1233, the Third Circuit wrote:
La.Code Civ.P. art. 592(A)(3)(c) allows a trial court, at any time before a decision on the merits, to enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action. If evidence is later produced establishing that the class boundary should indeed be made smaller than it presently is, the trial court may reduce its size at that time.
As to the Federal rules regarding class notice, F.R.C.P. Rule 23(c)(2)(B) provides:
For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
*87 (vi) the time and manner for requesting exclusion; and,
122(vii) the binding effect of a class judgment on members under Rule 23(c)(3).
In addition, F.R.C.P. Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. The F.R.C.P. Rule 23(e) requirement is “designed to summarize the litigation and the settlement and ‘to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.’ ” In re Prudential, 148 F.3d 283 at 326-27 (3rd Cir.1998) (quoting 2 Newberg on Class Actions § 8.32, at 8-109). Furthermore,
Federal Rule of Civil Procedure 23(e) provides that “[a] class action shall not be dismissed or compromised without the approval of the court, and notice ... to all members of the class in such manner as the court directs.” Thus, “class actions” cannot be compromised without first obtaining court approval and affording proper notice (and an opportunity to be heard) to absent class members.
Clearly, Rule 23(e) paints with a broad brush. It leaves to the courts the task of working out the practical details. Building on Rule 23(e), the Federal Judicial Center’s current Manual for Complex Litigation — a commonly-cited resource for federal courts handling class action suits — suggests a two-stage process. First, the proposed settlement should be submitted to the court for preliminary approval. Second, an order is entered providing for notice of a formal “fairness hearing,” during which the court will make a final determination as to whether the settlement is fair, reasonable, and adequate.
Kent A. Lambert, Class Action Settlements in Louisiana, 61 La. L.Rev. 89, 91-92 (2000).
In Louisiana, while La. C.C.P. art. 592(B) provides that the district court “shall direct to the class the best notice practicable under the circumstances ... ”, this only applies to actual class actions maintained under La. C.C.P. art. |P.y591(B)(3).[10] The statute is silent as re *88 lated to La. C.C.P. art. 591(B)(4) class. However, we can extrapolate that F.R.C.P. Rule 23 applies with regard to allowing actual and potential class members proper notice and an opportunity to be heard. Furthermore, La. C.C.P. art. 594, entitled Dismissal or Compromise governs the settlement and notice procedure for certain class actions and provides:
A. (1) An action previously certified as a class action shall not be dismissed or compromised without the approval of the court exercising jurisdiction over the action.
|?4(2) Notice of the proposed dismissal of an action previously certified as a class action shall be provided to all members of the class, together with the terms of any proposed compromise that the named parties have entered into. Notice shall be given in such manner as the court directs.
B. After notice of the proposed compromise has been provided to the members of the class, the court shall order a hearing to determine whether the proposed compromise is fair, reasonable, and adequate for the class. At such hearing, all parties to the action, including members of the class, shall be permitted an opportunity to be heard.
C. The court shall retain the authority to review and approve any amount paid as attorney fees pursuant to the compromise of a class action, notwithstanding any agreement to the contrary.
D. Any agreement entered by the parties to a class action that provides for the payment of attorney fees is subject to judicial approval.
E. If the terms of the proposed compromise provide for the adjudged creation of a settlement fund to be disbursed to and among members of the class in accordance with the terms thereof, the court having jurisdiction over the class action is empowered to approve the compromise settlement of the class action as a whole and issue a final judgment accordingly, following a finding that the compromise is fair, reasonable, and adequate for the class, and to order the distribution of the settlement fund accordingly, without the necessity of prior qualification of representatives of minors, interdicts, successions, or other incompetents or absentees, or prior approval of the terms of the settlement or the distribution thereof by another court; provided, that in such cases the court having jurisdiction over the class action shall include in the orders of settlement and distribution of the settlement fund appropriate provisions to ensure that all funds adjudicated to or *89 for the benefit of such incompetents, successions, or absentees are placed in appropriate safekeeping pending the completion of appointment, qualification, and administrative procedures otherwise applicable in this Code to the interests and property of incompetents, successions, and absentees. [Emphasis added]
12Jn the instant matter, the Adams plaintiffs have raised objections to the proposed Legal Notice and the Notice Plan. The disputed Legal Notice provides, in selected sections:
1. Why has this notice been issued?
The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your legal rights and options, before the Court decides whether to approve the proposed settlement. If the Court approves the proposed settlement, and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the proposed settlement allows. You will be informed of the progress of the proposed settlement.
This package explains the lawsuit, the proposed settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.
The Court in charge of the lawsuit is the Civil District Court, Orleans Parish, Louisiana, Division “D-16,” and the case is known as In re: Harvey TERM Litigation, Case No. 01-8708 and all consolidated cases: Leo Pollard, Jr., et al. v. Alpha Technical Services, Inc., et al., No. 01-8707 Civil District Court for the Parish of Orleans, Div. D, Sec. 16; Glenda Bailey, et al. v. Exxon Mob// Corporation, et al.., No. 01-8926, Civil District Court for the Parish of Orleans, Div. A, Sec. 5; James A. Williams, et al. v. Exxon Mobil Corporation, et al., No. 01-8959, Civil District Court for the Parish of Orleans, Div, C; Odile Gordon, et al. v. Exxon Mobil Corporation, et al., No, 01-14101, Civil District Court for the Parish of Orleans, Div. N, Sec. 8; Jo Ann B. Grigsby, et al. v. Joseph Grefer, et al., No. 01-16864, Civil District Court for the Parish of Orleans, Div. B. Sec. 15; Willie Williams, et al. v. Exxon Mobil Corporation, et al., No. 01-18280, Civil District Court for the Parish of Orleans, Div. F, Sec. 10; Ida Rose Wilson, et al. v. Exxon Mobil Corporation, et al., No. 01-19533, Civil District Court for the Parish of Orleans, Div. D, Sec. 13; John H. Cotton, et al. v. Exxon Mobil Corporation, et al., No. 01-19938, Civil District Court for the Parish of District Court for the Parish of Orleans, Div. K, Sec. 14; and Phil Burras, et al. v. Exxon Mobil corporation, et al., No. 02-644, Civil District Court for the Parish of Orleans, Div. G, Sec. 11.
12(jThere are several other lawsuits that have been filed that involve the same legal issues as those involved in this lawsuit, and the proposed settlement could extend to many of the individuals who have sued the Settling Defendants in those other lawsuits. Those other lawsuits include the following: Willie Williams, Jr., et al. v. Alpha Technical Services, Inc., et al., No. 09-1795, Civil District Court for the Parish of Orleans, State of Louisiana, Div. D, Sec. 16; Bernice Adams, et al. v. Alpha Technical Services, Inc., et al., No. 669987, 24th JDC, Jefferson Parish, State of Louisiana; Mary Green, et al. v. Alpha Technical Services, Inc., et al., No. 669995, 24th JDC, Jefferson Parish, State of Loui *90 siana; Brittany Roache, et al. v. Alpha Technical Services, Inc., et al., No. 669999, 24th JDC, Jefferson Parish, State of Louisiana; Mary Louise Roussel v. Grefer, et al., Civil District Court, Parish of Orleans, State of Louisiana, Docket No. 2005-06591; Earl A. Adams, Jr. et al. v. Chevron U.S.A. Inc, et al., No. 02-19308, Civil District Court, Parish of Orleans, State of Louisiana, Div. D, Sec. 16; Warren Lester, et al. v. Exxon Mobil Corporation, et al., No. 2002-19657, Civil District Court for the Parish of Orleans, State of Louisiana, Div. N, Sec. 8; Warren Lester, et al. v. Exxon Mobil Corporation et al., No. 630-402, 24th JDC, Jefferson Parish, State of Louisiana; Olivia Bailey, et al. v. Exxon Mobil Corporation, et al., No. 670-803, 241th JDC, Jefferson Parish, State of Louisiana; Olivia Bailey et al. v. Exxon Mobil Corporation et al., Civil District Court, Parish of Orleans, State of Louisiana, Docket No. 2009-1973; Dottie Adams, et al. v. Joseph Grefer, et al., No 624-278, 24th JDC, Jefferson Parish, State of Louisiana; Cynthia Waller, et al. v. Chevron U.S.A. Inc., et al., No. 08-5619, Civil District Court for the Parish of Orleans, State of Louisiana, Div. L, Sec. 6; Linda Johnson, et al. v. Chevron U.S.A. Inc., et al., No. 08-5355, Civil District Court for the Parish of Orleans, State of Louisiana, Div. D, Sec. 16; and Cheryl Aucoin, et al. v. Exxon Mobil Corporation, et al., No. 09-3690, United States District Court for the Eastern District of Louisiana. There may also be other lawsuits that have been filed that involve the same legal issues as those involved in this lawsuit, and the proposed settlement could extend to individuals who have sued the Settling Defendants in those lawsuits.
The people who have sued are called Plaintiffs, and the companies they sued are called Defendants. The | a7proposed settlement includes many, but not all, of the Defendants to this lawsuit.
2. What is this lawsuit about?
The lawsuit claims that, over the course of several decades, and specifically from 1946 until 1992, several of the Defendants operated pipe yards on properties owned by other Defendants to clean used oilfield tubulars of Oil Company Defendants. The lawsuit also claims that these pipe-cleaning operations involved the removal of a substance known as “scale,” which can form on the inside of pipes as oil moves up the pipes from beneath the Earth’s surface. Plaintiffs have alleged that the scale contained technologically enhanced radioactive materials (“TERM”), naturally occurring radioactive materials (“NORM”), and other allegedly hazardous materials. The lawsuit claims that, during the pipe-cleaning process, scale dust removed from the pipes drifted from the pipe yards and into surrounding communities. The lawsuit also claims that some individuals were exposed to scale dust on pipe yard property. Plaintiffs claim that exposure to this scale dust has caused or may cause physical illness, fear of illness, and/or emotional distress, and that the scale dust has caused damage to their real property.
3. Why is this a settlement class action?
In a class action, one or more people called Class Representatives (in this case 12 individuals) sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the is *91 sues for all Class Members, except for those who exclude themselves or opt out from the Class. The Settlement Class Representatives in this case are Russell Brown, Rose Mary Curry, JoAnn Grigsby, Carl Hendricks, Viola Hendricks, Rev. John Johnson, Jacqueline Nettles, Mary Shaw, Annie Young Smith, Alfred Taylor, Magale-an Williams, and Marion Woods. Civil District Court Judge Lloyd Medley denied Plaintiffs’ Motion for Class Certification, which was affirmed on appeal. This settlement class action is the result of a voluntary agreement between Plaintiffs and the Settling Defendants to resolve the claims alleged in this lawsuit on a class-wide basis.
4.Why is there a proposed settlement?
The district court did not decide in favor of the Plaintiff or the Settling Defendants. The Plaintiffs think they would have won if there had been a trial. The Settling | ¡^Defendants think the Court would have found them not liable and that the Plaintiff would not have won anything from a trial. But there was no trial. Instead, the Plaintiffs and the Settling Defendants agreed to a proposed settlement. That way, they avoid the cost of a trial as to the Plaintiffs’ claims against the Settling Defendants, and the people who claim to have been affected are compensated. The proposed settlement does not mean that any Settling Defendant violated any laws or did anything wrong. The Settlement Class Representatives and the attorneys representing them think the proposed settlement is best for all Class Members.
WHO IS IN THE PROPOSED SETTLEMENT
To see if you will get money from this proposed settlement, you first have to determine whether you are a “Settlement Class Member.”
5. How do I know if I am a part of the proposed settlement?
The settlement class is limited to persons or entities who or which owned real property and/or lived and/or operated a place(s) of business and/or regularly worked, attended school, and/or attended church from 1946 to June 30, 2008, within the geographic boundaries of the properties in and between the point beginning at the intersection of 8 Street and Manhattan Boulevard, then running south along the west side of Manhattan Boulevard to Lapalco Boulevard, then running west along the north side of Lapalco Boulevard to the 11 Avenue canal, then running north to Patriot Street, then running west to MacArthur Avenue, then running north along the east side of MacArthur Avenue to 7 Street, and then running east to 8th Street to the point of beginning, in Harvey, Jefferson Parish, Louisiana, and who or which claim to have sustained damages to person or real property as a result of the release or dispersion of toxic and/or hazardous substances, including TERM, NORM, radioactive substances and/or materials. And/or associated dust generated, stored or released as a result of the oil field pipe cleaning operations that are subject of the lawsuit. A map showing the settlement class area is attached.
6. Are there exceptions to being included?
Even if you meet the requirements set out in answer to question 5 above, you are not a Settlement Class Member if you do not claim to have sus *92 tained any personal injury, |2nfear of illness, emotional distress, and/or property damage from the claimed release or dispersion of toxic and/or hazardous substances from pipe cleaning operations at the pipe yards at issue in this case.
7. I am still sure if I am included.
If you are still not sure whether you are included, you can ask for free help. You can call 1-877-840-3850 or 504-840-3850 or visit www.Harvey settlement.com for more information. Or you can fill out and return the claim form described in question 10, to see if you qualify....
The Legal Notice Continues on for a total of 24 Sections. The Headings include “The Proposed Settlement — What You Get” (Sections 8 and 9), “How You Get A Payment — Submitting A Claim Form” (Sections 10, 11, and 12), “Excluding Yourself From The Proposed Settlement” (Sections 13, 14, 15), “The Lawyers Representing You” (Sections 16 and 17), “Objecting To The Proposed Settlement” (Sections 18 and 19), “The Court’s Fairness Hearing” (Sections 20, 21, and 22), “If You Do Nothing” (Section 23), and “Get More Information” (Section 24).
The second disputed document is the Detailed Notice Plan, which, in Section 1 provides:
1. Background. Notice of a class action to class members must satisfy due process. Guidelines on proper notice can be found in the Louisiana Code of Civil Procedure and in decisions of the United States Supreme Court and lower courts, namely that notice must be designed to endeavor to inform the class and to demonstrate that the proffered notice is reasonably calculated to do so:
(a)Notice of settlement of an action certified as a class action must be “provided to all members of the class, together with the terms of any proposed compromise that the named parties have entered into.” La. C.C.P. art. 594(A)(2); ■
(b) The notice must provide class members with information sufficient to consider the terms of the proposed settlement and to determine whether or not to object or opt out. See Reynolds v. National Football League, 584 F.2d 280, 285 (8th Cir.1978);
(c) When notice is due to a class member, the means employed must be of such a nature that it is intended to provide notice to the one entitled to it. Mullane v. Central Hanover [Bank &] Trust [Co.], 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950); see La. C.C.P. art. 592(B)(1) (“In any class action maintained under Article 591(B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort”);
(d) Notice must be “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Midlane [Mullane], 339 U.S. at 314 [70 S.Ct. 652]; Karkoukli’s, Inc. v. Dohany, 409 F.3d 279, 283 (6th Cir.2005). Cf. Fidel v. Farley, 534 F.3d 508, 514 (6th Cir.2008) (“Due process does not ... require actual notice to each party intended to be bound by the adjudication of a representative action.”) (emphasis in original);
(e) When a class member’s address is available through reasonably practi *93 cable efforts, direct mail notice is appropriate. Eisen v. Carlisle & Jacqueline [Jacquelin], 417 U.S. 156, 173-175 [94 S.Ct. 2140, 40 L.Ed.2d 732] (1974);
(f) As to other class members, publication in newspapers and on Internet websites, for example, is sufficient to comport with requirements of due process. See, e.g., White v. National Football League, 41 F.3d 402, 408 (8th Cir.1994) (notice in newspapers), abrogated on other grounds by Amchem Prods., Inc. v. Windsor, 521 U.S. 591 [117 S.Ct. 2231, 138 L.Ed.2d 689] (1997); In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 449 (S.D.N.Y.2004) (publication of notice materials on various websites).
Class Members are “all persons or entities who or which owned real property and/or lived and/or operated a place(s) of business and/or regularly worked, attended school, and/or attended church from 1946 to June 30, 2008” within a specific geographic area. Because such a lengthy period of time is involved, individual notice by |31 first class mail to all Class Members is not reasonably practicable. To the extent individual notice by first class mail to Class Members can be accomplished, it shall serve as the best notice practicable and will satisfy due process. With respect to Class Members for whom individual notice by first class mail is not reasonably practicable, due process will be satisfied by publication in the newspaper and notice on an Internet website, as set forth below.
The Adams plaintiffs argue that the judgment and order of the district court may substantially affect their legal rights. They further argue that “the notice structure proposed is designed to defeat such legal consultation and must therefore be considered unfair and inadequate.”
Particularly, the Adams plaintiffs argue: The crux of the instant writ is the status of the lawsuits, clients, and claims contained in the definitional section of the Notice Plan [sic] (section 1) read in pari materia with the geographically shrunken boundaries of the proposed settlement class in the Notice Plan [sic] (Section 5).
Further, the Adams plaintiffs argue that the settling plaintiffs and settling defendants may follow the procedure in 592(A)(3)(c) for the district court to alter, amend, recall, enlarge, (or as in this case) restrict, or otherwise redefine the constituency of the class, but only after a class is certified pursuant to the elements of 591(A). They argue that this step may not be skipped, and that the “detailed factual findings” under 591(B) are devoid of evi-dentiary support. Further they note that whether such findings are contained in the judgment assigned May 26th or the court order of May 28th is, at the end of the day, immaterial; as there was no evidence adduced in support of the 591(A) requirements at the only hearing on the matter, held May 26th, 2010.
In addition, the Adams plaintiffs argue that no evidence in support of class certification under the elements of 591(A), as required by 591(B), to reach a | S8settlement class request under 591(B)(4), was adduced by the district court to support the new geographic boundaries. In support of their argument, the Adams plaintiffs point to this exchange at the May, 26, 2010 hearing:
Mr. Zitler: There is a large sub-class of people who live outside the shrunken geographic boundary. I have maps if Your Honor needs to see them.
THE COURT: I don’t need to see the maps.
*94 Mr. Zitler: Okay.
THE COURT: I’m familiar with them.
Mr. Zitler: Outside that boundary the recovery is defined as zero. Now that is unfair on its face. You don’t need to wait for a fairness hearing.
The respondents first argue that the Adams plaintiffs do not have standing to file their writ application because they do not qualify as members of the settlement class. The respondents argue that the Adams plaintiffs brought the writ application solely on behalf of individuals who the Adams plaintiffs claim do not fall within “the definition of the settlement class, and is inadequate as to the ‘outside’ non-settlement class members” clientele on its face. For this reason, the respondents argue that the settlement cannot be inadequate as to individuals who are not parties. Further, they argue that the Adams plaintiffs have no right to obtain a writ to interfere with a proposed class settlement that does not impact the individuals they claim to represent.
The respondents further argue that Sections 1 and 5 of the Notice Plan, which the Adams plaintiffs object to, are easily explained and reconciled. They point at that the two paragraphs do not affect the procedural or substantive rights ofJjjthe Adams plaintiffs, all of whom are outside the settlement class boundary preliminarily approved by the district court.
The respondents also argue that paragraphs 1 and 5 of the Detailed Notice are distinct, and are designed to assist the reader to determine whether he or she may, in fact, be a member of the proposed settlement class, and to inform the reader of his or her rights and obligations if he or she falls within the class definition. They point out that the argument of the Adams plaintiffs is problematic in unsupported assumptions that the proposed class settlement calls for “a full-scale evisceration of multiple-plaintiff lawsuits not consolidated within the In Re Harvey TERM litigation (e.g., the Earl Adams litigation for which the Adams plaintiffs serve as plaintiffs’ counsel).” The respondents maintain that the proposed settlement extends to individuals not lawsuits, as the key element is whether a particular individual meets the criteria for inclusion within the settlement class.
The respondents argue that the Adams plaintiffs are wrong when they argue that Paragraph 1 of the Detailed Notice— merely by referencing those “several other lawsuits that have been filed that involve the same legal issues as those involved in this lawsuit,” and informing the reader that “the proposed settlement could extend to many of the individuals who have sued the Settling Defendants in those other lawsuits,” “zeros out the recovery of the ... ‘outside’ claimants.” The respondents argue that the intent of Paragraph 1 of the Detailed Notice is straightforward; i.e., to alert individuals who may be plaintiffs in non-Harvey TERM lawsuits that they may qualify as settlement class members under the class definition detailed in Paragraph 5; and, if so, that they must take certain actions to [^participate in, object to, or opt out of the proposed settlement. The reference to those lawsuits and the possible binding effect of the proposed class settlement on certain individuals who are plaintiffs in those lawsuits takes into account that “the lay reader” may not know to inquire further about the class settlement’s potential impact on his or her particular claim without identification of the lawsuit to which he or she is a plaintiff. The respondents argue that this use of the Detailed Notice by the settling parties is entirely consistent with the requirements of Louisiana law for ensuring res judicata effect as to those individuals who would be *95 bound by the class settlement.[11]
The respondents also argue that the plain language of Paragraph 1 of the Detailed Notice makes abundantly clear that the proposed settlement does not impact the rights of individuals who do not qualify as settlement class members. Separately, the plain language of Paragraph 5, which sets out the settlement class definition, merely permits those individuals reading the Detailed Notice to ascertain whether they are part of the proposed class settlement.
Rather, the respondents maintain that the settling parties are not attempting to “zero out” the claims of the Adams plaintiffs.’ [12] The respondents argue that those individuals need not opt out of the settlement class because they are not included in the settlement class, and they cannot and will not be constructively opted in to the settlement. Moreover, they argue that the proposed class settlement does not bind individuals who are not within the definition of the settlement class. |SfiThey also contend that those individuals’ claims may proceed in their separate lawsuit, notwithstanding the class settlement.
The respondents conclude that since the writ application of the Adams plaintiffs was brought solely to assert the rights of individuals who do not fall within the settlement class definition, that supervisory review is not justified or warranted and the stay should be lifted and the application dismissed.
In the matter sub judice, the district court Order and the record before us does not establish that any new facts or evidence were considered by the district court in reaching its extensive factual conclusions to effectively maintain a class for settlement purposes. “The establishment of geographic boundaries of a class must be based on evidence in the record.” Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1184 (La.App. 1st Cir.1992), writs denied, 605 So.2d 1122 (La.1992). “The decision to certify is within the broad discretion of the [district] court, but that discretion must be exercised -within the framework of [R]ule 23.” Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir.1996), (citing Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). Therefore, while it appears that the district court is allowed discretion in modifying the size and status of the class, the district court must provide detailed findings of fact to substantiate such a modification.[13]
*96 1^During our earlier consideration of this matter, we determined that the district court’s reliance on this line of case law was in error because a class had never been certified in this matter. We saw nothing in the previously filed appeal or the emergency writ applications either certifying or defining a class. We noted that procedurally, the district court could not “establish a new methodology for approving a class settlement without first granting a new trial and then certifying a class.” However, after hearing the motion for New Trial on remand, the district court issued its May 26, 2010 order, and basically adopted the identical Notice Plan of the Plaintiffs Management Committee. However,
[i]n a mass tort case, when the evidence presented at the class certification hearing is insufficient to support the area defined by the trial court, the trial court abuses its discretion by establishing such boundaries. The court in Royal Street Grocery, Inc. v. Entergy New Orleans, Inc., 99-3089, 99-3040 [99-3090], p. 10 (La.App. 4 Cir. 1/10/01), 778 So.2d 679, 686, writ denied, 01-374 (La.4/12/01), 789 So.2d 594, stated: “[a] precise geographic definition of the class is not absolutely necessary. In light of the purpose of the class action procedure, it is objectively reasonable for the geographic area to be defined broadly so as to encompass all potential class members.”
Guillory v. Union Pac. R. Co., 2004-1545, p. 2 (La.App. 3 Cir. 11/2/05), 915 So.2d 1034, 1035-36 writ denied, 2005-2430 (La.3/24/06), 925 So.2d 1233.
This Court has had the opportunity to review the entire writ applications in this matter, and while the district court purportedly attempts to classify the plaintiffs as a settlement class, we find that there are obvious deficiencies in the proposed Notice Plan and legal notice. Notably, while the applicable state and federal statutes support the creation of either a predominating issue class under La. | 37C.C.P. art. 591(B)(3), or a class maintained for settlement purposes only, pursuant to La.C.C.P. art. 591(B)(4), we do not find that the reasons for judgment offered by the district court elicit any new facts that would distinguish the newly proposed class from the earlier class that was denied certification.
Based upon our review of the writ application, we find that the district court failed to make any specific findings of fact which delineate or differentiate the new proposed class from the class denied certification. Thus, we find that the district court abused its discretion in approving the Notice Plan and Legal Notice in the instant matter.
In them second assignment of error, the Adams plaintiffs argue that the district court abused its discretion by “ignoring” Orrill v. AIG, Inc., 2009-0888 (La.App. 4 Cir. 4/21/10), 38 So.3d 457, and further, that when considering the affirmation by this Court of the district court judgment denying class certification, the district court erred in not considering the doctrine of law of the case.
In Louisiana law, a class action may be certified only if the numerosity, adequacy of representation, and commonality requirements are present. The bur *97 den of proving the existence of all three elements falls on the party seeking to maintain the class action. Billieson v. City of New Orleans, 98-1282, p. 10 (La.App. 4 Cir. 8/3/99), 729 So.2d 146, 153-54 writ denied, 99-0946 (La.10/29/99), 749 So.2d 644, writ denied 99-0960 (La.10/29/99), 749 So.2d 645 (citing Cotton v. Gaylord Container, 96-1958, p. 13 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147.) [Emphasis added]
1. Adequacy of Representation
The F.R.C.P. Rule 23 as related to class counsel provides:
| oS(g) Class Counsel.
(1)Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
(A) must consider:
(iv) the work counsel has done in identifying or investigating potential claims in the action;
(v) counsel’s experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(vi) counsel’s knowledge of the applicable law; and
(vii) the resources that counsel will commit to representing the class;
(B) may consider any other matter pertinent to counsel’s ability to fairly and adequately represent the interests of the class;
(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney’s fees and nontaxable costs;
(D) may include in the appointing order provisions about the award of attorney’s fees or nontaxable costs under Rule 23(h); and
(E)may make further orders in connection with the appointment.
(2) Standard for Appointing Class Counsel. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.
(3) Interim Counsel. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.
(4) Duty of Class Counsel. Class counsel must fairly and adequately represent the interests of the class.
_[ot)Louisiana has addressed the adequacy of representation requirement as follows:
[b]ecause the source of Louisiana’s class action procedure is Fed. Rule Civ. P. 23, we are guided by the decisions of the federal courts and conclude that the adequacy of representation requirement is satisfied by establishing that: 1) class representatives are a cross-section or typical of the claims of all class members; and 2) class counsel is qualified, experienced and generally able to conduct the litigation. The interests of absent class members can only be protected by requiring that both of these basic standards are satisfied. Class counsel must be more than merely an attorney admitted to practice before a particular court hearing the case; he must have sufficient experience and training to satisfy the trial court that he will be a strenuous advocate for the class. Johnson [v. Shreveport Garment Co.], 422 F.Supp. [526] at 535 [ (W.D.La.1976) ].
*98 Cotton v. Gaylord Container, 96-1958, pp. 17-18 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 770 writ denied sub nom., Cotton v. Gaylord Chem. Corp., 97-0800 (La.4/8/97), 693 So.2d 147.
In Orrill, multiple class actions[14] were filed against an insurer in connection with alleged failings by insurer to timely adjust claims and/or timely offer to settle claims following two hurricanes. After the district court signed a preliminary approval order for settlement of first action, counsel from first action sought to hold counsel from second action in contempt.[15] The district court held class counsel from the second action in contempt and entered a preliminary injunction preventing counsel in the second action from contacting members of the other class. Counsel from second class action appealed. Id.
|4nOn appeal, this Court noted that the “issues presented for review are res nova; there is no case law to support either party’s position, other than factors to consider at a fairness hearing. However, we must determine if the proposed settlement in this case is fair in light of the existence of another active class action in another jurisdiction.” Id., 38 So.3d at 459-59.
As to the instant matter, the Adams plaintiffs refer to Orrill as standing for the propositions that:
“The exercise of discretion is to be tested by inquiries that ensure that the settlement is in the best interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression.” (internal citations omitted) ...
“As viewed by this Court, we must examine whether the re-definition of the class and the ensuing settlement adversely impacted the vested, substantive rights of persons who were actual or potential members of the Oubre class.” Orrill v. AIG, Inc., 20009-CA-0888 [2009-0888] [At] p. 11 (4th Cir.2010) [ (La.App. 4th Cir.2010), 38 So.3d 457],
They further aver that:
... those claims arising within the settlement class boundary in Section 5 are referred to as “inside” claims, and accordingly, those claims arising outside the boundary in Section 5 are referred to as “outside” claims. Although both sets of clients and claims are included (wrongfully, it is submitted) in the Section 1 definition of the Notice Plan, your Appellants respectfully suggest that even the vast discretion afforded to the trial court does not extend to any settlement proposal that zeros out the recovery of the more numerous of those subclasses — the “outside” claimants [such as the Earl Adams, et. al. mass tort litigants listed in Section 1. [sic]
The Adams plaintiffs also argue that the adequacy of representation by counsel was compromised because of the May 26, 2010 judgment and the May 28, 2010 order issued by the district court. They argue:
[41Here, there was no class counsel at all prior to May 26th, 2020 [sic], but worse, at the May 26th, 2010 preliminary hearing, the Dart Group became the “court-approved” counsel to both “inside” and “outside” litigants, even though “outside” litigants were included in Section 1 of the Notice Plan but defined by Section 5 as destined for zero recovery. And even worse than in Or-rill, their contractual attorneys, i.e.— *99 your Appellants here, were relegated to the ethically challenging position of not being “court-authorized” to advise their (former) clientele against the Notice Plan (see Transcript, Exhibit B, May 26, 2010, generally). Worse yet, faced with the “Good Housekeeping” stamp of Court-approval on the Settlement Counsel, Appellants’ representation is now undermined in their contractually-based legal duty to advise (see Notice Plan, Sections 15, 16). Years of litigation with their “outside” clientele, expenditure of significant costs, and proceeding deeply into the discovery phase, all went for naught in the “discretion” of the court below. Relegating your Appellants to such an underwhelming position of non-advice is inadequate per se, as much or more of an abuse of discretion as was the more forthright injunction in Orrill. The Court action here may be more difficult to explain, and more subtly subversive of our notions of substantial justice and fundamental fairness, but nonetheless reaches the exact same result as in Orrill: inadequate representation fraught with conflicts of interest by Settlement Counsel.
The Adams plaintiffs further argue that the proposed settlement agreement has the effect of res judicata, and is essentially an “end-run to settle all claims.” They further maintain that unless the May 28, 2010 order is reversed, the court-approved preliminary settlement of counsel that “Section 1” outside litigants need do nothing will be diametrically opposed to the controlling advice given to all Section 1 litigants in the “detailed” Notice Plan. The Adams plaintiffs further argue that the “do-nothing” approach is precisely the kind of legal advice that “adversely impacts the vested, substantive rights of the “Section 1” litigants, because their recovery will be zeroed. The Adams plaintiffs argue that they “will have lost their clients, their expenses, their fees, and indeed the case itself, all on|42such advice by Court-appointed counsel the sole benefit of Settling Defendants and the PMC insiders.”
Essentially, the Adams plaintiffs argue that the legal advice proffered in response to the Writ Application is inadequate on its face. They argue that any advice to the contrary by the plaintiffs’ counsel is essentially undermined by authority of the Court approval itself, a dilemma that neither the Rules of Professional Conduct nor public policy may countenance. They argue that no authority is cited by the Plaintiffs’ Management Committee to support the novel proposition that individual litigants may be subsumed by listing their cases in a purported settlement class, effectively substituting themselves as court-appointed counsel in the place and stead of legitimate contractual attorneys, and that the common-law attack on Orrill is misplaced. The Adams plaintiffs argue that the Court need not reach any further in order to reverse the court below in the preliminary approval of such a proposed settlement plan. They maintain that approval of the settlement is “unjust, unfair, inadequate on its face, and contra bonos mores.”
The Adams plaintiffs conclude their argument by requesting that sanctions be imposed upon the respondents for their alleged wrongful inclusion of the Adams plaintiffs in “Section 1” of their proposal in the first place; and further, that the Adams plaintiffs should be “awarded reasonable attorneys’ fees for the hundreds of hours spent fighting to uphold the sanctity of contract and the attorney-client relationship itself.”
The respondents argue that the writ application of the Adams plaintiffs do not seek to oppose preliminary approval of the *100 proposed class settlement based on invocation of the rights of supposed clients who would fall within the settlement | 43class as defined. Nonetheless, even if the Applicants were to seek a writ on behalf of such individuals, adequate alternative remedies exist that make their resort to writ procedure at the preliminary approval stage entirely inappropriate.
They further argue that although styled as an “Emergency Supervisory Writ Application,” the Adams plaintiffs actually seek mandamus relief to compel the district court to vacate its Preliminary Approval Order and Notice Plan. They argue that Louisiana law is clear that mandamus is an “extraordinary remedy,” which is to be used only “sparingly,” to compel a public official to perform a ministerial duty that is required by law and only when no adequate remedy exists by appeal or where delay caused by the use of another remedy would cause injustice.
The respondents maintain that with respect to the Applicants’ “outside clientele,” it is clear that no writ can issue here, as they face no harm or injustice whatsoever from the consummation of the proposed class settlement. And, to the extent the Applicants claim to seek relief as to individuals who may fall within the settlement class definition, no writ may issue here because, by statute, a mechanism exists that protects the rights of putative settlement class members and vests them with an adequate remedy by appeal.[16]
Further, the respondents argue that as to the instant matter, the district court granted preliminary approval of an Article 591(B) settlement class, which provides each class member with notice and opt-out rights, pursuant to La.Code Civ. Proc. arts. 592(B)(1) and 594(A)(2). They conclude that the Preliminary Approval Order and Notice Plan approved by the district court adequately effectuated those rights.
|44The respondents argue that any plaintiff who qualifies as a settlement class member may choose to opt out prior to the deadline set by the district court, pursuant to La.Code Civ. Proc. art. 592(B)(1), and 592(C). In the alternative, they maintain that any client of the Adams plaintiffs who qualifies as a settlement class member may choose to participate in the settlement and submit a proof of claim using the form approved by the district court. And, in the alternative, any plaintiff who qualifies as a settlement class member may choose to timely file objections to the proposed class settlement and appear at the final fairness hearing set by the district court. See La.Code Civ. Proc. art. 594(B). A class member who validly opts out of the settlement is not bound by the settlement and instead may proceed with his or her individual claims. A class member who validly objects to the proposed class settlement may appeal to this Court from an Order and Judgment of the district court granting final approval.[17]
The respondents also argue that the Louisiana Code of Civil Procedure and other authorities adequately protect the legal interests of any individual who falls within the proposed settlement class definition, whether the individual has been represented by the Plaintiffs’ Management Committee, any other counsel, or has not been represented by counsel, or named as *101 a plaintiff in any of the existing lawsuits. They contend that in any class action, there may be attorneys who claim to represent individuals who would be subsumed within the class. But, that does not justify or mandate overturning preliminary approval of a proposed class settlement, else the mechanism set forth in the Louisiana Code of Civil Procedure would be rendered a nullity.
U-jThey argue that Orrill does not support the contention that a procedural challenge to the adequacy of representation requirement be accomplished via writ application. They point out that even if the Adams plaintiffs were deemed to assert their writ application on behalf of clients who would qualify as settlement class members, whose rights are well-protected via the final fairness hearing and through the appellate process following final approval, no writ may issue here to interrupt the class settlement mechanism set forth in the Louisiana Code of Civil Procedure. The respondents point out that this Court, in Orrill, clearly defined the issue it was resolving: “[w]e must determine if the proposed settlement in this case is fair in light of the existence of another active class action in another jurisdiction.” Or-rill, 38 So.3d at 458-59 (emphasis in original). They argue:
The facts and procedural posture of Orrill are so far removed from what is presented here that it is difficult to imagine any set of circumstances in which Orrill and this litigation could be mentioned in the same breath. This litigation involves a sihgle class action— this proposed settlement class — and a series of individual actions; there are not multiple, competing class actions. Orrill, on the other hand, involved three separate class action lawsuits in three different jurisdictions, in each of which a trial class had been defined and certified. Id. at *1-3 [458-61]. Orrill was first-filed, but was the last case to be certified for class action treatment. Id. at *1 [458-59]. Nonetheless, when the parties in Orrill reached a proposed class settlement, they sought certification of a re-defined settlement class to subsume members of the class in one of the other previously-certified class actions (Oubre). Id. at *3 [460-61], *7 [464-65]. In Orrill district court then issued a temporary restraining order prohibiting Oubre counsel from contacting any member of the re-defined Orrill settlement class. Id. at *7 [464-65]. Notwithstanding this Court’s grant of a writ holding that the district court could not enjoin Oubre class-appointed counsel from communicating with their clients, the district court issued a preliminary injunction allowing Oubre counsel to contact their own class members but prohibiting them from contacting any Orrill class members, a hollow ruling for Oubre counsel because the re-definition of the Orrill class made all | AKOubre class members “Orrill class members.” Id. At the heart of the dilemma faced by this Court and the parties was the fact that different statutory remedies were potentially available to claimants— a $5,000 remedy for failure to timely adjust claims and a $1,000 remedy for failure to pay claims — with the Orrill settlement effectively taking the Oubre plaintiffs’ potential $5,000 statutory recovery out of the equation for most claimants. Id. at *7 [464-65], *9 [466— 67] (“[T]he structure of this settlement provides that regardless of the claim, the most any claimant can receive is $1,000. Thus, some class members will be made whole, while others can not and will not.”). It was in this context that this Court concluded — applying the final fairness factors for approval of a class settlement adopted by the Fifth Circuit *102 in Reed v. General Motors Corp., 703 F.2d 170 (5th Cir.1988), see Orrill, 2010 WL 1611023, at *7-9 [38 So.3d at 464-67] — simply that one certified class action cannot subsume another certified class action without meeting a rigorous level of scrutiny:
A class notice [in Oubre] had been court-approved and mailed. The opt-out period for the Oubre class had long since expired. Thus, the class was clearly established and counsel had been appointed to represent it. Suddenly, out of left-field, in our humble opinion, a new Orrill class was defined and approved in another court, with its own set of counsel.... A notice was approved and mailed, but many notices never reached the intended mark. It is our opinion that the persons who were suddenly subsumed into Orrill settlement class [sic] did not receive adequate notice and were not adequately represented. Id. at *8 [465-66],
The respondents argue that the circumstances leading to this Court’s inadequate notice and inadequate representation holdings in Orrill clearly are not present here. Regarding notice, this Court focused on the fact that the only method of notice attempted by the settling parties in Orrill was U.S. mail. Id. Evidence at the fairness hearing demonstrated that “a website to allow interaction and communication between the proposed settling class and counsel” could have |4Tand should have been created, and that advertising in a newspaper should have been used to communicate notice.
Also, the respondents argue that the Notice Plan issued by the district court directs the settling parties to communicate notice by creation of a website, by advertisement in the New Orleans Times-Picayune, and by direct U.S. mail. The settling parties also are establishing a toll-free telephone number to answer any questions a class member may ask. The concerns expressed by the Court in Orrill regarding the notice employed there simply do not exist here.
Finally, the respondents maintain that there is no Order in place that prohibits the Adams plaintiffs from communicating with counsel concerning whether, assuming they qualify as settlement class members, to opt out, participate in the settlement, or object in advance of and at the fairness hearing.
Adequacy of representation is a key factor to the fair adjudication of class actions. As stated earlier in our discussion, based on this review of the federal rule and the state statutes, it follows that under Louisiana law, satisfaction of all elements of La. C.C.P. art. 591(A) is a prerequisite for an action to be maintained as a settlement class under La. C.C.P. art. 591(B)(4), even though the requirements of La. C.C.P. art. 591(B)(3) need not be met.[18] Furthermore, “a class action may be certified only if the numerosity, adequacy of representation, and commonality requirements are present. The burden of proving the existence of all three elements falls on the party seeking to maintain the class action.” Billieson, p. 10, 729 So.2d at 153-54.
Paragraph D of the May 28, 2011 Order approving the class action settlement provides as follows:
14RP. Adequate Representation in the Settlement Context. The Settlement Class Representatives’ interests do not conflict with absent Settlement Class Members and the Settlement Class Representatives’ interests are coextensive with those of the absent Settlement *103 Class Members. The Special Master’s oversight of allocations from an Extraordinary Claim Fund, as provided in the Preliminary Settlement Agreement, will further ensure the absence of conflict between the Settlement Class Representatives and the absent Settlement Class Members. Additionally, the Court recognizes the experience and expertise of Settlement Class Counsel and finds that the Settlement Class Counsel have represented, and will continue to represent, the interests of absent Settlement Class Members. Thus, the adequacy requirement of Article 591(A)(4) is satisfied for purposes of certifying a settlement class.
Based on our review of this matter, we find that the district court erred in failing to recognize Orrill as controlling in its application of the adequacy of representation argument raised by the Adams plaintiffs. Thus, for the reasons stated previously, the exhibits attached to the writ application and opposition before us do not set forth any new facts that were considered in accepting the Notice Plan.
2. Law of the Case
Another issue raised by the Adams plaintiffs in the instant matter is that the district court never reconciled its findings in its Judgment and Reasons, dated May 26, 2010 and its May 28, 2010 order preliminarily granting settlement class status, with that of the final judgment issued by this Court affirming the district court judgment denying class certification in the appeal, 2008-CA-1486.
In Landry’s Seafood House-New Orleans, Inc. v. Bd. of Com’rs of Orleans Levee Dist., 2010-1052, p. 17 (La.App. 4 Cir. 12/80/10), 56 So.Sd 380, 391, this Court discussed the doctrine of law of the case as follows:
149The law of the case doctrine refers to (a) the binding force of trial court rulings during later stages of the trial; (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law at a subsequent appeal in the same case. This doctrine may bar rede-termination of a question of law or a mixed question, of law and fact during the course of a judicial proceeding. Scott v. American Tobacco Company, Inc., 09-0461, p. 4 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046, 1050; writs denied, 10-1358 (La.9/3/10), 44 So.3d 686; 10-1361 (La.9/3/10), 44 So.3d 707; stay granted sub nom, Philip Morris USA Inc. v. Scott, — U.S. —, 131 S.Ct. 1, 177 L.Ed.2d 1040 (2010); 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). The policy reasons behind this doctrine include avoidance of re-litigation of an issue, consistency of result in the same litigation, and promotion of efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 330, 256 So.2d 105, 107 (1971). The doctrine is inapplicable in cases of palpable error or where manifest injustice would occur. Keaty v. Raspanti, 96-2839, p. 4 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085,1087.
The Adams plaintiffs argue that the final judgment of the district court denying class certification was the subject of the numbered appeal, 2008-CA-1486, entitled Leo Pollard, et al v. Alpha Technical, et al. This Court affirmed the judgment of the district court denying class certification on January 28, 2010.
*104 We note that while the subject order attempts to make a settling class in an effort to facilitate a conclusion to the litigation, we also find that the Adams plaintiffs are correct in arguing that that district court does not qualify its order by including any discussion of the earlier appeal in this matter, 2008-CA-1486. This is an issue that this Court noted from the outset in our original consideration of the instant the writ application and, while the district court notes that this is a new class, no effort is made to distinguish the classes.
| .^Furthermore, the cases relied upon by the district court in this matter, particularly Gates v. Rohm and Haas Co., 248 F.R.D. 434, (E.D.Pa.2008), may not be applicable in the interests of all parties, as the May 26, 2010 order presupposes. The facts in Rohm are that residents and property owners brought a putative class action against a specialty chemicals company and manufacturer of heating and cooling technology, pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) as well as under Illinois state law for damages allegedly resulting from the contamination of their drinking water by pollutants allegedly generated and released by named defendants. Id., 248 F.R.D. at 436. The parties filed a joint motion for preliminary approval of proposed settlement with manufacturer. Id.
However, Rohm is easily distinguishable from the instant matter. Considering that the parties in the instant matter are at odds over the proposed agreement, there clearly has not been a meeting of the minds between the parties to confect a fair and reasonable settlement that they are willing to approve, especially considering if the outcome of proposed settlement class threatens the viability of the claims of certain members in the proposed settlement class. Furthermore, in Rohm, the parties jointly sought approval of a proposed settlement class. We note that the plain language of the May 26, 2010 order merely denies the relief without any further explanation of the factual determinations taken into account by the district court. Additionally, the district court relies on F.R.C.P. Rule 23 to arrive at its conclusion that a class settlement is appropriate. This Court has no indication what new facts were submitted[19] by the settling parties in urging its new motion for | .^approval of the settlement class. However, in Rohm, the specific nature of class settlement requires that the class must be certified, that is, the class must be able to satisfy the prerequisites of numerosity, adequacy of representation, and commonality requirements are present in order to move forward with a proposed settlement.
Again, our review of this matter indicates that the law applied by the district court in issuing its judgment of May 26, 2010 and order of May 28, 2010, failed to take into account that a class was never certified. The statutory authority and case law cited by the district court applies to classes which have been certified, and for these reasons, the matter must be remanded to the district court for reconsideration and reevaluation of the statutes *105 and case law cited in support of its May 26th and May 28th Orders, taking into specific account the effect of the earlier appeal and the respective status of the parties in this matter. The doctrine of law of the case particularly refers to “(a) the binding force of trial court rulings during later stages of the trial; (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law at a subsequent appeal in the same case.” See Landry, supra.
The law of the case provides that the district court’s earlier determination denying class certification does have binding effect.[20] Nevertheless, while the district court is attempting to exercising discretionary authority to change and/or modify the class to create a settlement class, it is apparent that the Adams plaintiffs | a?have raised a legitimate question of the Court to determine if the district court was correct in issuing its judgment, thereby creating a new class which has the potential to zero out the respective claims. This Court cannot say if the findings of the district court are not all encompassing because the district court has not issued detailed findings of fact which would provide guidance to this Court as to how the constituency of the proposed class for settlement purposes is: (1) distinguishable from the original class for which certification was denied and (2) distinguishable from Adams plaintiffs. Therefore, district court is ordered to reconcile the conflict between its earlier judgment denying class certification, and provide detailed findings of fact to explain in detail how these “classes” are distinguishable from each other, paying particular attention to resolving how the claims of the Adams plaintiffs are not endangered by the proposed settlement class, including but not limited to, the new boundaries of the proposed settlement class and the potential impact, if any, on the Adams plaintiffs.
In their third assignment of error, the Adams plaintiffs argue that the district court erred in failing to notice a “Lack of Candor to the Tribunal.” They argue:
... [njever in the recorded opinions of Louisiana tort law has there been such an outrageous lack of candor towards the tribunal by settling counsel. In Or-rill, the Panel noted with “curiosity” that settling defendant Citizens attempted “to settle claims with those whom the settling plaintiff counsel did not represent” Orrill v. Aig [AIG], et al., No. 2009-CA-0888 on rehr’g, (4th Cir.2010). Here, the lack of candor is worse a fortitori in that the purported settlement is defined as zero. The consequences of such misleading settlement approval cannot be unintended by those selfsame settlement counsel, insofar as settling defendants and “inside” settlement counsel, having crafted their secretive settlement in precise detail, clearly benefit by the res judicata effect resulting from the delivery of thousands of zero-recovery “outside” litigants, who could have continued their ongoing | .^individual suits (in which their attorneys have invested hundreds of thousands of dollars and serious discovery without further ado, but for the wrongful inclusion of their cases in Section 1 of this overreaching travesty of a settlement class.
Since this assignment of error ties into the first and second assignments of error, and further considering that the issue *106 raised in this assignment of error once again raises issues as related to the Notice Plan and whether or not the district court relied solely upon the representations of the Plaintiffs’ Management Committee, we do not have any factual or evidentiary support of record to make any determination that there was a lack of candor to the tribunal. We further note that the respondents did not specifically address this argument of error in their opposition. For these reasons, we pretermit discussion of this assignment of error.

DECREE

For the foregoing reasons, the judgment of the district court is reversed, and the district court is directed to conduct an evidentiary rehearing on the Adams plaintiffs’ motion for new trial. The district court shall, in view of this Court’s affirmation in appeal No. 2008-CA-1486, consider the law of the case and any new facts and evidence offered by the parties, and, shall make specific findings as to the issues raised by the Adams plaintiffs. In its reasons for judgment, the district court is ordered to provide a detailed discussion of facts and evidence provided by the settling parties utilized in making its determination. These factual determinations must be supported with detailed findings of fact specifically delineating: (1) how the proposed settlement class is distinguished from the class that was denied certification; (2) how the proposed class differentiates the claims of the Adams | .^plaintiffs, with respect to proposed class “zeroing” the claims of the Adams plaintiffs.
With regard to the proposed new boundaries in the proposed Notice of Settlement, particularly Section 1, the district court shall determine by the application of any specific and relevant law: (1) whether any of the Adams plaintiffs’ recovery will be zeroed out by the conditions contained in the proposed Notice of Settlement, and (2) whether the proposed Notice of Settlement specifically preserves the rights of counsel representing the Adams plaintiffs.
In the event the Adams claims are determined to be compromised due to the proposed extra-boundary preclusion, then the district court shall order the parties to construct both a Notice Plan and Legal Notice to satisfy all requirements of La. C.C.P. art. 591(A) and fairly delineate the boundaries of the proposed settlement class, preserving the rights of counsel representing the Adams plaintiffs.
REVERSED AND REMANDED WITH INSTRUCTIONS.
BELSOME, J., dissents with reasons.

. The original writ applications 2010-C-788 and 2010-C-805 were consolidated. The re-lators in writ 2010-C-805, the Mitchell plaintiffs, subsequently filed a motion to withdraw the emergency writ application on November 15, 2010. The order granting the dismissal was issued on March 15, 2011.

. La. C.C.P. art. 592(A)(3)(b) has been amended to give any party the right to obtain the trial court's findings of fact and reasons for judgment on a class certification decision, and to codify Davis v. Jazz Casino Co., 2003-0276, 2003-1223, 849 So.2d 497 (La.6/6/03) that class action certification judgments are appealable as of right.

. We note that the Plaintiffs' Management Committee and the Settling Defendants make up what is composed of the "settling parties.” The district court refers to the settling parties in its May 26, 2010 judgment, and its May 28, 2010 Order.

. La. C.C.P. art. 591 was last updated via Acts 1997, No. 839, § 1, eff. July 1, 1997. This version is current through the 2010 Legislative Session.

. These collective prerequisites are generally known as numerosity, commonality, typicality, adequacy, and identifiability (class definition). Louisiana procedural law requires that a class action be certified only if all five requirements are present.

. 1 La. Civ. L. Treatise, Civil Procedure § 4:12 (internal citations and footnotes omitted).

. 1 La. Civ. L. Treatise, Civil Procedure § 4:12 (internal citations and footnotes omitted). The Treatise notes that "the third type of class action is the one which has prompted the greatest use of the device. This type originally was the "spurious” or F.R.C.P. Rule 23(b)(3) class action, which was not included in the original Louisiana Code, but was subsequently crafted by the Louisiana courts. The 591B(3) action added to the Code in 1997 is a "spurioustype” class action, with some additional limitations upon its use.

. 1 La. Civ. L. Treatise, Civil Procedure § 4:12 (internal citations and footnotes omitted).

. This particular issue related to the adequacy of representation will be discussed in the second assignment of error.

. Pursuant to La. C.C.P. art. 592(B)(1), "notice” for any action maintained as a class action under La.C.C.P. art. 591(B)(3), provides:
In any class maintained under Article 591(B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. This notice, however given, shall be given as soon as practicable after certification, but in any event early enough that a delay provided for the class members to exercise an option to be excluded from the class will have expired before commencement of the trial on the merits of the common issues.
La. C.C.P. art. 592(B)(2) provides:
The notice required by Subparagraph B(l) shall include:
(a)A general description of the action, including the relief sought, and the names and addresses of the representative parties or, where appropriate, the identity and location of the source from which the names and addresses of the representative parties can be obtained.
(b) A statement of the right of the person to be excluded from the action by submitting an election form, including the manner and time for exercising the election.
(c) A statement that the judgment, whether favorable or not, will include all members who do not request exclusion.
(d) A statement that any member who does not request exclusion may, if the member desires, enter an appearance through counsel at that member’s expense.
(e) A statement advising the class member that the member may be required to take further action as the court deems necessary, such as submitting a proof of claim in order to participate in any recovery had by the class.
(f) A general description of any counterclaim brought against the class.
*88 (g) The address of counsel to whom inquiries may be directed.
(h) Any other information that the court deems appropriate.
The Court notes that the Commentary of La. C.C.P. art. 592 provides:
The notice provisions established by La. Code Civ. Proc. Ann. art. 592(B) expressly apply only to class actions certified under the provisions of La. Code Civ. Proc. Ann. art. 591(B)(3), which sets out one of the alternative additional requirements for maintaining a class action, requiring a finding that the common questions of fact or law predominate over questions affecting only individual members, and a finding that a class action is the superior procedural method for deciding the controversy. When a class is certified because the trial court has made those findings, the court is required by La. Code Civ. Proc. Ann. art. 592(B) to direct that the members of the class be given "the best notice practicable under the circumstances.” Specifically, individual notice must be given to all members of the class who can, through reasonable effort, be identified.

. The respondents refer to Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173-177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (detailing notice obligations imposed on parties to class action), in support of their proposition that the proposed notice was consistent with Louisiana law.

. Those who fall outside of the affected boundary.

. Since the initial prerequisites for class certification (numerosity, adequacy of representation, and commonality) are required to proceed even if the action is maintained as a settlement class, pursuant to F.R.C.P. Rule 23 and La. C.C.P. art. 591, we can extrapolate that:
"... it is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met.” Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir.2003) (citing O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 737-38 (5th Cir.2003)).
Although class certification hearings "should not be mini-trials on the merits of the class or individual claims ... going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.” Unger v. Amedisys Inc., 401 F.3d 316, 321 (5th Cir.2005) (citing Castano, 84 F.3d at 740). The “close look” demanded by Amchem re *96 quires examination of both "the parties’ claims and evidence.” Id. "The plain text of Rule 23 requires the court to ‘find,’ not merely assume, the facts favoring class certification.” Id. [Emphasis added].
Madison v. Chalmette Refining, LLC., 637 F.3d 551, 554 (5th Cir.2011).

. In Orrill there were more than two actions. For simplicity in discussing Orrill, we shall refer to the first and second action.

. The facts of the Orrill case were taken from the earlier appeal Orrill v. AIG, Inc., 09-0566, 09-0568 (La.App. 4 Cir. 12/09/09), 26 So.3d 994.

. The respondents rely on State ex rel. City of New Orleans v. New Orleans & C.R. Co., No. 9423, 37 La.Ann. 589, 1885 WL 6343, at *4 (La.1885) (mandamus cannot lie where statute provides adequate remedy) in support of this argument.

. The respondents rely on Devlin v. Scardelletti, 536 U.S. 1, 10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002); Fidel v. Farley, 534 F.3d 508, 513 (6th Cir.2008); La.Code Civ. Proc. art. 592(A)(3)(B), for this contention.

. See supra, pages 86-87.

. Section 1 of the Order Preliminarily Approving Class Action Settlement And Certifying Class Action For Settlement Purposes Only reads:
The Court has considered the submissions of the Settling Parties with regard to class certification for settlement purposes only and has analyzed the proposed Settlement Class pursuant to Articles 591(A), (B)(1)(b), (B)(3), and (B)(4) of the Louisiana Code of Civil Procedure. The Court finds that all elements necessary for certification of the proposed Settlement Class under Articles 591(A), (B)(1)(b), (B)(3) and (B)(4) have been satisfied.... [Emphasis Added],

. We submit that the final judgment has binding effect to the class denied class certification.